**Date Signed:**
**October 20, 2017**




UNITED STATES BANKRUPTCY COURT

DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>CUZCO DEVELOPMENT U.S.A., LLC,<br><br>Debtor. | Case No. 16-00636<br>Chapter 11 |
| CUZCO DEVELOPMENT U.S.A., LLC,<br><br>Plaintiff,<br><br>vs.<br><br>YEDANG ENTERTAINMENT USA, INC.,<br><br>Defendant. | Adv. Pro. No. 16-90032<br><br>Related Dkt. No. 1 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

On September 19-22, 2017, the court conducted the trial of this adversary proceeding and an evidentiary hearing on the plaintiff's objection to the defendant's

proof of claim in the main bankruptcy case.[1] Chuck C. Choi, Esq. and Alison A. Ito, Esq. appeared for plaintiff/objector Cuzco Development U.S.A., LLC ("Cuzco USA"), and Christopher J. Muzzi, Esq. appeared for defendant/claimant Yedang Entertainment USA, Inc. ("Yedang USA").

Based on the evidence presented, I make the following

FINDINGS OF FACT:

A. **The Parties and the Keeaumoku Property**

Cuzco USA is a Hawaii limited liability company. The sole member of Cuzco USA is Cuzco Development Korea, Ltd. ("Cuzco Korea"), a Korean corporation.

Yedang USA is a Hawaii corporation. The sole member of Yedang USA is Yedang Company Co., Ltd. ("Yedang Korea"), a Korean corporation.

From 2007 (or earlier) until his death in June 2013, Doo Sup Byun, a Korean national, effectively controlled Cuzco Korea, Cuzco USA, Yedang Korea, and Yedang USA (although he did not own all of the stock in Yedang Korea or Cuzco Korea).

Doo Sup Byun's widow is Soo Kyung Yang. Ms. Yang's brother, Chung Youl Yang, owned a corporation called Yang Enterprises, Inc. ("YEI").

In December 2007, Cuzco USA acquired fee simple title to a 3.5 acre commercial property located at 805-919 Keeaumoku Street, Honolulu, Hawaii (the "Keeaumoku Property"). The Keeaumoku Property is improved with several low rise

[1] Bankr. Case No. 16-00636, dkt. 471.



U.S. Bankruptcy Court - Hawaii #16-90032 Dkt # 136 Filed 10/20/17 Page 2 of 18

buildings leased to commercial tenants.

## B. The Loan Claims

Beginning in 2007 and continuing until September 2014, Yedang USA advanced a substantial amount of money to Cuzco USA. As of the date of Cuzco USA's bankruptcy filing, the net principal amount of these advances (after applying all payments and credits) was $1,393,705.00. Cancelled checks, bank records, and other contemporaneous documents prove these advances. Any challenge to the existence, amount, or date of the advances was not proven.

Yedang USA obtained the money it advanced to Cuzco USA from its parent company, Yedang Korea. Yedang USA had no significant independent business activity during the relevant time periods.

Cuzco USA argues that the advances were not really loans to Cuzco USA, but were rather just one step in a flow of funds orchestrated, by Mr. Byun, among the companies that he controlled. It is true that, after receiving an advance from Yedang USA, Cuzco USA would sometimes disburse equal or nearly equal amounts of money to Cuzco Korea or other companies controlled by Mr. Byun. However, a vast majority of the advanced funds were used by Cuzco USA to pay its mortgage and other legitimate debts and expenses. Furthermore, any of the funds that made their way back to Yedang Korea or Yedang USA were properly credited as repayments. Even if Mr. Byun controlled the affairs of the companies and directed flows of funds among



U.S. Bankruptcy Court - Hawaii #16-90032 Dkt # 136 Filed 10/20/17 Page 3 of 18

them does not negate Cuzco USA's obligation to repay Yedang USA.

Both Cuzco USA and Yedang USA intended that these advances were loans and not capital contributions. Both companies recorded them as loans in all relevant contemporaneous records, including tax returns, accounting records, and audited financial statements. (Cuzco USA challenged the reliability of some of these documents, but it failed to prove its contention.)

Cuzco USA executed a series of promissory notes evidencing its promise to repay some of the advances made by Yedang USA. Each promissory note provides for annual interest at five percent.

The repayment terms of the promissory notes are ambiguous. Each of them provides that, "This Note shall be FULLY paid on [a date approximately two years after the date of the respective note] -OR- Borrower will make monthly payments on [sic] the amount of $0 beginning one month from date hereof and thereafter on the same day of each and every subsequent month until the debt is fully paid." A literal reading could suggest that the borrower had the option to make no payments on the note forever. But this interpretation is absurd; the only reasonable interpretation is that, by inserting "$0" as the monthly payment amount, the parties intended to eliminate the option to make monthly payments and to require the debtor to follow the "balloon payment" option.

Cuzco USA probably signed the promissory notes in a batch, well after the

advances were actually made, and backdated the notes to reflect the approximate date of the advances. Cuzco USA also probably delivered the notes to Yedang USA.

After Cuzco USA filed its bankruptcy petition, Cuzco USA found the original promissory notes in its files. But for a period of time, Yedang USA occupied the same office as Cuzco USA at the Keeaumoku Property and the two companies' records were commingled. Therefore, it is more likely than not that Cuzco USA delivered the notes to Yedang USA but Yedang USA inadvertently left the notes behind when it moved out of the shared office.

As of June 20, 2016, the accrued interest on the loans, at the five percent interest rate specified in the promissory notes, was $361,388.89.

## C. The Supermarket Lease Claims

The Keeaumoku Property includes a space that is built out as a supermarket. YEI leased the supermarket space from Cuzco USA beginning in 2010. The last lease between Cuzco USA and YEI for the supermarket space is dated October 1, 2011 (the "Supermarket Lease").

Effective as of January 1, 2013, YEI assigned its interest in the Supermarket Lease to Yedang USA. Yedang USA paid YEI $2,700,000.00 for the Supermarket lease and the other assets of the supermarket business.

Section 5.01 of the Supermarket Lease requires Yedang USA to pay rent to Cuzco USA in the amount prescribed in lease, "without the necessity of notice to

Tenant by Landlord, . . . in United States currency, . . . without any set-off or counterclaim." Section 24.01 of the Supermarket Lease provides that Yedang USA would be in default if (among other things) it failed to pay any rent when due.

Section 24.02 of the Supermarket Lease provides that, upon the occurrence of any event of default, Cuzco USA had various remedies. Among the remedies, the lease permitted Cuzco USA to

> at once re-enter and take possession of the Premises without being deemed guilty of any trespass or becoming liable for any loss or damage-occsioned [sic] thereby. No re-entry or taking of possession of the Premises by [Cuzco USA] shall be construed as an election on [Cuzco USA's] part to terminate the Lease, unless a written notice that the Lease is terminated is given by [Cuzco USA] to [Yedang USA].

The lease also permits Cuzco USA to terminate the lease "as of the date set forth or otherwise provided in any notice of termination" and to relet the premises "with or without terminating the Lease."

After Yedang USA bought the Supermarket Lease from YEI, Yedang USA and YEI agreed that YEI would manage and operate the supermarket. YEI also agreed to pay the rent due under the Supermarket Lease to Cuzco USA. But, by the spring of 2016, the rent for the Supermarket Lease was seriously delinquent. YEI and Yedang USA paid rent to Cuzco USA only intermittently.

In late March 2016, the supermarket held a "going out of business" sale. In early April 2016, YEI voluntarily vacated the premises covered by the Supermarket

Lease and turned in the keys to Cuzco USA. YEI left behind many unpaid vendors; its principal, Mr. Yang, went into hiding to avoid those creditors. Cuzco USA reentered and took possession of the premises at that time, and shortly thereafter relet the supermarket to a new tenant.

On April 6, 2016, Cuzco USA demanded payment by Yedang USA of the delinquent rent under the Supermarket Lease in the amount of $135,925.75. The deadline to pay was April 14, 2016. Yedang USA did not cure its default by April 14, 2016.

On April 15, 2016, Cuzco USA filed a summary possession action against Yedang USA.

On April 25, 2016, Cuzco USA gave Yedang USA written notice of termination of the Supermarket Lease effective as of April 26, 2016.

On April 27, 2016, a representative of Yedang USA reentered the supermarket premises, attempting to stake Yedang USA's claim to the premises under the Supermarket Lease. Cuzco USA rejected the claim because it had already terminated the lease. After a protracted standoff, Yedang USA's representative left the supermarket premises on or around April 29, 2016.

On May 2, 2016, Yedang USA tendered payment of the delinquent rent plus accrued interest. Cuzco USA refused to accept the tender. Yedang USA repeated its attempts to reenter the supermarket premises around and after that time, but Cuzco



U.S. Bankruptcy Court - Hawaii #16-90032 Dkt # 136 Filed 10/20/17 Page 7 of 18

USA denied access.

Yedang USA offered expert testimony that the net present value of the difference between the base rent and gross rent (base rent plus common area maintenance charges) under the Supermarket Lease and the corresponding market rates is $232,082 and $494,374, respectively. I find that these figures do not reliably indicate the value of the lessee's interest in the Supermarket Lease. Section 32.01 of the Supermarket Lease (the so-called "kick-out provision") broadly authorizes Cuzco USA to terminate the lease, without any liability to Yedang USA, if Cuzco USA decided (among other things) to redevelop the Keeaumoku Property. The expert's calculation implicitly assumes that the lessor would never exercise the kick-out provision, but this is unrealistic because it has always been the plan of Cuzco Korea and Mr. Byun to redevelop the Keeaumoku Property. The expert also testified that kick-out provisions are common in leases of similar properties, so the market rent reflects the detriment of such provisions. But there is no evidence that the terms of this particular kick-out provision are typical in the market or that the probability of exercise of the kick-out provision in this lease is similar to the probability of exercise in the market in general.

## D. The Retail Shops Lease Claims

Cuzco USA and Yedang USA entered into another lease, dated December 1, 2011, which covered space adjacent to the supermarket that was occupied by



U.S. Bankruptcy Court - Hawaii #16-90032 Dkt # 136 Filed 10/20/17 Page 8 of 18

concessionaires (the "Retail Shops Lease").

Section 1.01(q) of the Retail Shops Lease provides that:

> In the event of early termination, Tenant shall be entitled to reimbursement from landlord for any unrecovered premium payment in the amount of $525,000.00. This special term shall supersede some of the provisions in Section 32.01 of this Lease.

(The Supermarket Lease does not include a provision like section 1.01(q) of the Retail Shops Lease.) Section 32.01 of the Retail Shops Lease is the "kick-out provision" that permits the Landlord to terminate the lease in certain circumstances unrelated to any default by the tenant. Article 24 of the Retail Shops Lease (which is identical to the same-numbered article of the Supermarket Lease) permits the lessor to terminate the lease (and enforce other remedies) if the tenant defaults.

Under the only reasonable interpretation, the phrase "early termination" in section 1.01(q) refers to a termination of the Retail Shops Lease pursuant to section 32.01. It does not include a termination of the lease due to the tenant's default. The reference to section 32.01 in the second sentence of section 1.01(q) makes this clear.

Yedang USA offered expert testimony that the net present value of the difference between the base rent and gross rent (base rent plus common area maintenance charges) under the Retail Shops Lease and the corresponding market rates is $9,613 and $69,384, respectively. I find that these figures do not reliably indicate the value of the lessee's interest in the Retail Shops Lease, for the same reasons



U.S. Bankruptcy Court - Hawaii #16-90032 Dkt # 136 Filed 10/20/17 Page 9 of 18

given above with respect to the Supermarket Lease.

## E. Punitive Damages

Yedang USA seeks punitive damages based on Cuzco USA's conduct concerning the Supermarket Lease and the Retail Shops Lease.

Yedang USA failed to prove, by a preponderance of the evidence, that Cuzco USA's conduct with respect to the leases was willful, wanton, or tortious.

Yedang USA did not attempt to establish that punitive damages are warranted for Cuzco USA's failure to repay the loans.

## F. Procedural History

Cuzco USA filed for chapter 11 relief on June 20, 2016.

Cuzco USA commenced this adversary proceeding on July 19, 2016, to avoid the Yedang USA leases.[2] Yedang USA filed an answer on August 19, 2016, and a counterclaim for breach of the leases, breach of the implied covenant of good faith and fair dealing, trespass, fraud, unjust enrichment, conversion, interference with prospective economic advantage, and for declaratory and injunctive relief. [3]

I granted partial summary judgment in favor of Cuzco USA on counts I and II of the complaint and avoided the unregistered Supermarket Lease and Retail Shop

---

[2] Dkt. 1.

[3] Dkt. 6 and 8.



U.S. Bankruptcy Court - Hawaii #16-90032 Dkt # 136 Filed 10/20/17 Page 10 of 18

Lease per 11 U.S.C. § 544(a)(3).[4] Yedang USA did not appeal the judgment.

Yedang USA also filed, in the main bankruptcy case, a proof of claim asserting claims of (a) $2,700,000.00 for the Supermarket Lease, (b) $525,000.00 for early termination of the Retail Shops Lease, and (c) $1,184,240[5] for money lent to Cuzco USA plus $328,861.83 of prepetition interest. The trial included Yedang USA's counterclaim in this adversary proceeding and Cuzco USA's objection to Yedang USA's proof of claim filed in the main case.

Based on these findings of fact, I draw the following

## CONCLUSIONS OF LAW:

### A. Jurisdiction

The bankruptcy court has personal jurisdiction over the parties and jurisdiction over the subject matter.[6] Venue is proper in this district.[7] This is a core proceeding. In this adversary proceeding and the contested matter instituted in the main case, by the claim objection, all parties consented to entry of final orders and judgments by this court.

---

[4] Dkt. 38 and 39.

[5] At trial, Yedang USA proved that the correct amount of the loans was $1,393,705. The lower figure stated in the proof of claim apparently omits a few advances that Yedang USA made to Cuzco USA in 2013 and 2014. See dkt. 68 at 8-9.

[6] *See* 28 U.S.C. §§ 157, 1334.

[7] *See id.* §§ 1408-1409.



U.S. Bankruptcy Court - Hawaii #16-90032 Dkt # 136 Filed 10/20/17 Page 11 of 18

## B. Legal Standard

Yedang USA's counterclaim and its proof of claim both assert claims against the bankruptcy estate of Cuzco USA. Both present the fundamental question of whether Yedang USA's claims should be allowed under the Bankruptcy Code.

A timely filed proof of claim is deemed allowed unless a party objects.[8] A properly filed proof of claim is also "prime facie evidence as to the validity and the amount of the claim."[9] If an objection is filed,[10] this creates a contested matter that is resolved only upon notice and opportunity for a hearing.[11] In order to defeat a claim, the objecting party must come forward with sufficient facts that carry probative force at least equal to the allegations contained in the proof of claim.[12] If the objecting party manages to provide "sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by the preponderance of the evidence."[13]

---

[8] 11 U.S.C. § 502(a).

[9] Fed. R. Bankr. P. 3001(f).

[10] Fed. R. Bankr. P. 3007.

[11] Fed. R. Bankr. P. 9014; *In re Blackstone*, 269 B.R 699, 703 (Bankr. D. Idaho 2001).

[12] *Id.,* citing *Wright v. Holm* (*In re Holm*), 931 F.2d 620, 623 (9th Cir. 1991).

[13] *Id.,* citing *In re Consol. Pioneer Mortg.*, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995)(quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3rd Cir. 1992)).



U.S. Bankruptcy Court - Hawaii #16-90032 Dkt # 136 Filed 10/20/17 Page 12 of 18

## C. The Loan Claims

Yedang USA asserts an unsecured claim in the amount of $1,393,705.00, based on its advances to Cuzco USA.

Cuzco USA does not deny that it received this amount of money from Yedang USA. Cuzco USA objects on other grounds.

First, Cuzco USA contends that the advances were capital contributions rather than loans. Cuzco USA points out that, for most of the time while the advances were made, Cuzco USA and Yedang USA were under the common control of Mr. Byun. But companies in a controlled group can lend money to and borrow money from each other, and all of the contemporaneous documents treat the advances as loans.

Second, Cuzco USA points out that the advanced funds originated with Yedang Korea (under Mr. Byun's control), that Yedang USA had little if any independent business activity, and that Yedang USA was merely used as a conduit for the loaned funds. This is irrelevant. Even if Cuzco USA's contentions were correct, this would not relieve it of its obligation to repay the money, it would merely shift the right to receive any repayment of the loans from Yedang USA to Yedang Korea or Mr. Byun. However, since only Yedang USA filed a timely proof of claim and neither Yedang Korea or a representative of Mr. Byun filed a claim for the same loans, Yedang USA is the only party with the right to enforce the claim.[14] Moreover, if A lends money to B

[14] Fed. R. Bankr. P. 3001(b).



U.S. Bankruptcy Court - Hawaii #16-90032 Dkt # 136 Filed 10/20/17 Page 13 of 18

in consideration of B's promise to repay C, B must repay C even though C did not lend B the money.[15]

Third, Cuzco USA points out that, in some instances, immediately after Cuzco USA received money from Yedang Korea via Yedang USA, Cuzco USA disbursed equal or nearly equal amounts of money to Cuzco Korea or other companies controlled by Mr. Byun. But Yedang USA has given Cuzco USA full credit against the debt for all repayments that it directly or indirectly received. Further, Cuzco USA used the vast majority of the funds it received from Yedang USA to pay its mortgage and other debts and expenses.

Finally, Cuzco USA points out that the promissory notes allegedly evidencing its debt to Yedang USA were signed well after the funds were advanced, may never have been delivered to Yedang USA, and contain repayment terms that are difficult to parse. Even if there were problems with the promissory notes, this does not negate the loans. The backdating of the notes does not invalidate the borrower's liability or the holder's ability to enforce the notes according to its terms. It is probable that Cuzco USA delivered the notes to Yedang USA after they were signed, but Yedang USA left the original notes behind when it vacated the office it shared with Cuzco USA. The repayment terms of the promissory notes are not well drafted, but can reasonably be interpreted in only one way, as set forth in the findings of fact.

---

[15] Restatement (Second) of Contracts § 302(1) (1981).



U.S. Bankruptcy Court - Hawaii #16-90032 Dkt # 136 Filed 10/20/17 Page 14 of 18

Cuzco USA offered no legal argument for the proposition that the loans can or should be recharacterized as capital contributions. Similarly, Cuzco USA offered no legal argument for the proposition that the Yedang USA loans should be subordinated to other claims. Because Cuzco USA has argued in the main case that it has sufficient assets to pay all claims in full, subordination of the Yedang USA claims would serve no purpose since they would be paid in full in any event.

The portion of Yedang USA's claim based on the loans is an allowed unsecured claim.

## D. The Supermarket Lease Claims

Yedang USA contends that Cuzco USA wrongfully terminated the Supermarket Lease. Yedang USA claims damages in the amount of $2,700,000 (the amount it paid for the supermarket business) plus $2,139,871.09 (the amount of leasehold improvements and personal property in the supermarket).[16]

These claims hinge on Yedang USA's contention that Cuzco USA improperly terminated the lease. I reject this contention.

There is no dispute that the rent under the Supermarket Lease was delinquent when YEI abandoned the premises and Cuzco USA took possession. Under the unambiguous terms of the Supermarket Lease, Cuzco USA was not required to give

[16] It is not entirely clear that Yedang USA included the latter amount in its request for damages. It is not identified in the proof of claim. Yedang USA's primary witness included the amount in the body of his direct testimony declaration, dkt. 68 at 36. However, he did not include it in his summary of damages. *Id.* at 37.



U.S. Bankruptcy Court - Hawaii #16-90032 Dkt # 136 Filed 10/20/17 Page 15 of 18

Yedang USA notice of the rent delinquency. (Further, YEI, which was operating the supermarket for Yedang USA, must have had actual knowledge of its own rent default.) Cuzco USA gave written notice of the termination of the lease, and that is the only notice that the Supermarket Lease required the lessor to give.

Yedang USA suggests that it could have paid the delinquent rent by an offset against the amount that Cuzco USA owed for the loans. But the Supermarket Lease unambiguously provides that all rent must be paid in cash.

Yedang USA attempted to tender the delinquent rent in cash, but Cuzco USA rightfully rejected that tender because it had already terminated the lease and was not required to accept any cure.

Even if the lease termination was arguably improper (and it was proper), the amount that Yedang USA spent to buy and improve the supermarket business would not be an appropriate measure of damages. The uncontroverted evidence establishes that YEI did not pay the rent, did not pay many of its suppliers, and voluntarily shut down the supermarket business. The only plausible inference is that the supermarket business was a losing venture that was not worth what Yedang USA had paid.

Yedang USA's wrongful termination damages claim under the Supermarket Lease should be disallowed.

## E. The Retail Shops Lease Claim

Yedang USA's only claim based on the Retail Shops Lease arises out of section



U.S. Bankruptcy Court - Hawaii #16-90032 Dkt # 136 Filed 10/20/17 Page 16 of 18

1.01(q), which requires Cuzco USA to pay Yedang USA "any unrecovered premium payment in the amount of $525,000" in the event of an "early termination" of the Retail Shops Lease.

The determination of whether a contract is ambiguous is a question of law.[17] The phrase "early termination" is ambiguous in that it could mean either any termination of the lease prior to the expiration of its stated term, or a termination of the lease under section 32.01, the section mentioned in the very next sentence of the lease.

"When an ambiguity exists so that there is some question as to the intent of the parties, intent is a question for the trier of fact."[18] I have found, as the trier of fact, that the parties to the Retail Shops Lease intended that "early termination" would refer to a termination under section 32.01, not a termination for default.

Therefore, Yedang USA is not entitled to recover the lease premium under the Retail Shops Lease, and its claim for that amount should be disallowed.

## F. Punitive Damages

Punitive damages are generally not recoverable under contract law[19] and "will never be recoverable, absent conduct that violates a duty that is independently

---

[17] *Foundation Intern., Inc. v. E.T. Ige Const., Inc.*, 102 Haw. 487, 497 (2003). Hawaii law governs pursuant to section 34.08 of the Supermarket Lease.

[18] *Foundation Intern.*, 102 Haw. at 497.

[19] *Francis v. Lee Enterprises, Inc.*, 89 Haw. 234, 241 (1999).

recognized by principles of tort law."[20] To recover punitive damages under a breach of contract claim, the injured party must show that the breach was done "in such a willful, wanton or reckless manner as to result in a tortious injury."[21]

Yedang USA failed to prove its claim for punitive damages. That portion of the claim should be disallowed.

* * *

Counsel for Cuzco USA shall submit a proposed separate judgment consistent with these findings and conclusions.

END OF FINDINGS OF FACT AND CONCLUSIONS OF LAW

---

[20] *Id.* at 242.

[21] *Ross v. Stouffer Hotel Co. (Hawaii) Ltd., Inc.*, 76 Haw. 454, 466 (1994) quoting *Amfac, Inc. v. Waikiki Beachcomber Investment Co.*, 74Haw. 85, 139 n. 23 (1992).



U.S. Bankruptcy Court - Hawaii #16-90032 Dkt # 136 Filed 10/20/17 Page 18 of 18